UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CREA CONSTRUCTION, INC.,      )
                                       )
           Plaintiff        )
                                       )
              v.              )     Cause No. 1:19-CV-2284 RLM-TAB
                                       )
WAL-MART STORES, INC.,         )
                                       )
           Defendant    )

## OPINION AND ORDER

CREA Construction, Inc., an African-American owned general contractor, brought suit against Wal-Mart Stores, Inc. under 42 U.S.C. § 1981 alleging that Wal-Mart discriminated and retaliated against it based on race when it placed CREA on bid hold and removed it from Wal-Mart's construction program. Walmart moved for summary judgment, contending that the applicable four-year statute of limitations bars CREA's claims and that CREA hasn't provided any evidence of discrimination or retaliation.[1] For the following reasons, the court grants Walmart's motion.

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court construes the

---

[1] Wal-Mart Stores, Inc. reportedly changed its legal name to Walmart, Inc. On February 1, 2018 [Doc. No. 39 at 1, n.1].

evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to CREA, as the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Walmart bears the burden of informing the court of the basis for its motion, and presenting evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If it meets that burden, CREA can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in [its] favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011); see also Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."). Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events". Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

CREA doesn't dispute the facts asserted in Sections A-D of Walmart's statement of undisputed material facts [Doc. No. 39 at p. 2-6] relating to Walmart's Supplier Inclusion Initiative, CREA, CREA's history with Walmart and the award of the Indianapolis store remodeling project on December 23, 2014, so

the court adopts those facts and incorporates them by reference. The  following facts relate to CREA's performance during the project and Walmart's response thereto and are viewed in the light most favorable to CREA.

Rea Johnson, a Black female, owns and operated CREA. Walmart awarded the remodeling contract to CREA in December 2014 and CREA completed its work on May 8, 2015. Under the contract, Ms. Johnson was to serve as CREA's daytime job supervisor. From February 5, 2015 to mid-April 2015, Walmart's Director of Construction, Efrain Vasques, received complaints from Walmart's construction manager (David Green), project manager (Brand Hanson), and store manager (Lindsey Maclean), about CREA's performance and Ms. Johnson's lack of communication and unavailability. Mr. Vasquez and/or Mr. Green met with Ms. Johnson in person or by phone multiple times in February and March 2015 to discuss and resolve those issues.

On March 13, 2015, after receiving a report that Ms. Johnson frequently wasn't present at the job site and wasn't communicating with the store planning team, Mr. Vasquez told Walmart's Senior Director of New Store Construction, Mark Caspermeyer, of the recurring issues with CREA's performance. Mr. Caspermeyer told Mr. Vasqueez on March 17, 2015, that Walmart needed to end its relationship with CREA. No one told CREA at that point.

On March 31, 2015, Mr. Hanson contacted Mr. Vasquez to report paint damage to the store's deli caused by a CREA subcontractor. Mr. Vasques reported

the issue to Mr. Caspermeyer.

Mr. Vasquez received more complaints from Store Panning Manager Dee Bumgardner on April 8 about the lack of daytime representation from CREA at the job site, and resulting delays in installation of the self-checkout machines.

Mr. Vasquez eventually hired another contractor, William Nichols (a white male Wagner Development employee), to supplement Ms. Johnson's day supervisor role and to serve as the main communication liaison between CREA and the Walmart construction team, store planning team, and store management through the completion of the project. When Ms. Johnson was told of the decision to hire Mr. Nichols on April 14, 2015, she felt humiliated and told Mr. Vasquez that she believed it was racially discriminatory.

Justin Bolton, CREA's night supervisor, called Ms. Johnson on April 19, 2015 to inform her he was quitting. Mr. Bolton stated during his deposition that of the 400 projects he'd worked on for Walmart, "this was the worst [he'd] ever been on."

At some point before April 23, 2015, Mr. Caspermeyer informed Mr. Vasquez that CREA wasn't to be placed on any future projects in Indiana, Ohio, and Michigan. On April 23, 2015, Ms. Johnson sent the following email to Scott Wood, Walmart's Contract Manager:

Subject: Bid Hold

Are we on bid hold?  There have been a lot of remodels that we are not bidding.  Please advise.

4

[Doc. No. 40-2 at p. 22-23].  Ms. Johnson stated during her deposition that:

> I wanted to know what was going on because I'm seeing all these bids, and I'm not on the bid list...I'm privy to [the list] – that information because I was a subcontractor before.  So I know what's going on...[T]he GCs send me bid invites [so I can see that they're bidding on it, but I'm not].

[Doc. No. 43-2 at p. 74-75].

Scott Wood forwarded Ms. Johnson's email to Efrain Vasquez on April 23, 2015, asked how Mr. Vasquez wanted him to respond, and said that "Mark had me place her on hold until there is a compliance and performance eval gut we were asked not to inform them." [Doc. No. 40-2 at p. 22]. Mr. Vasquez responded: "Mark plans to have a call with her but not sure when. He did state that she is not to be placed on any of our Indiana/Ohio/Michigan bids." *Id.* Mr. Wood's replied, "I knew not to include her but this is her second time asking. I'll let it sit for now I guess." *Id.*.

CREA completed the project on schedule on May 8, 2015, was paid for its services, and wasn't sanctioned for any damages resulting from the March 30-31 paint over-spray incident or for any other shortcoming.

On May 18, 2015, Ms. Johnson asked Mark Caspermeyer for a meeting to discuss the project. The meeting occurred on June 22, 2015 via a conference call during which Mr. Caspermeyer discussed Walmart's issues with CREA's performance and confirmed that CREA was on "bid hold" status.

Walmart contends that the four-year statute of limitations applicable to § 1981 claims, *see* Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004); Dandy v. United Parcel Service, Inc., 388 F.3d 263, 269 (7th Cir. 2004), bars CREA's claims because the alleged discriminatory and retaliatory acts (the complaints about CREA's performance during the remodel project, the hiring of the communication liaison, and CREA's placement on bid hold) occurred in February, March, and April, 2015, CREA knew about each of those actions by May 23, 2015, and didn't file it's complaint until June 7, 2019.

CREA alleges that it was the victim of "continuing violations"  that didn't "culminate in a "harmful violation" until June 22, 2015, when Mark Caspermeyer confirmed that CREA was on bid hold. Citing Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis, 42 F.3d 1054, 1058  (7th Cir. 1994) ("plaintiff may recover for acts barred by the statue of limitations if [it] can show a 'continuing violation.'").

To effectively toll the statute of limitations, "there must be a present violation to complain about, not just the persisting effects of past discrimination." *Id.* (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1971)). If CREA knew, " or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed [it], [it] may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279,

282 (7th Cir. 1993).

CREA bases its argument on the belief that no harm actually occurred until Walmart confirmed that CREA was on bid hold. But the decision to hire a communication liaison, to place CREA on bid hold, and to terminate Walmart's relationship with CREA were made in March and April 2015; and Ms. Johnson knew of Walmart's actions and the negative impact they would have on CREA's revenue stream and believed Walmart's actions were racially motivated on or before she emailed Mr. Wood on April 23, 2015. CREA waited more than four years to file its complaint, and hasn't presented any viable basis for tolling the limitations period.

But Ms. Johnson testified that, based on her conversations with Walmart personnel, Walmart uses its "bid hold" in either of two ways. In most instances, she explains, Walmart places what is meant to be a temporary hold on a contractor's right to bid on projects, to get the contractor to finish any ongoing job and meet with Walmart higher-ups about how past problems can be prevented. If the meeting is mutually beneficial, Walmart reinstates the contractor's right to bid on projects.

What Walmart did to CREA is different. Walmart didn't confirm that CREA was on bid hold until after the project on the Indianapolis store was completed and CREA had been paid. There was no meeting with Walmart executives at corporate headquarters. And the bid hold apparently remains in place today,

almost six years later. A reasonable fact-finder could credit Ms. Johnson's testimony about what is usually done when a bid hold is imposed and find that Walmart had imposed a bid hold that was out of the ordinary, and further find that Ms. Johnson and CREA didn't learn of the permanent nature of its bid hold until after June 8, 2015, making its complaint timely.

Walmart, accordingly, isn't entitled to dismissal on statute of limitation grounds.

But on the merits of its claim, CREA hasn't shown that but for Ms. Johnson's race it wouldn't have been placed on bid hold.

When, as here, direct evidence of discrimination isn't available, the *McDonnell Douglas* burden-shifting framework may be applied to § 1981 claims. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Oliver v. Joint Logistics Managers, Inc., 893 F.3d 408 (7th Cir. 2018); Humphries v. CBOCS West, Inc., 474 F.3d 387 (7th Cir. 2007). To establish a *prima facie* case of discrimination under *McDonnell Douglas*, CREA must show that: (1) it (or in this case its principal, Ms. Johnson) is a member of a protected class; (2) its job performance met Walmart's legitimate expectations; (3) it suffered an adverse employment action; and (4) another similarly situated contractor who wasn't in the protected class was treated better. Khowaja v. Sessions, 893 F.3d 1010, 1014-1015 (7th Cir. 2018). If CREA makes a *prima facie* showing, the burden of production shifts to Walmart to provide a legitimate, nondiscriminatory reason for

the adverse employment action. If Walmart makes the requisite showing, the burden shifts back to CREA to present evidence establishing a genuine dispute as to whether those reasons were a pretext for discrimination. Smith v. Chicago Transit Auth., 806 F.3d 900, 905 (7th Cir. 2015). But "[u]nder *McDonnell Douglas*'s terms ... only the burden of production ever shifts to the defendant, never the burden of persuasion." Comcast Corp. v. National Association of African American-Owned Media, 140 S.Ct. 1009, 1019 (2020). The ultimate burden remains with the plaintiff to " prove that but for race, it would not have suffered the loss of a legally protected right." *Id.*.

No reasonable trier could find on this record that CREA was meeting Walmart's legitimate expectations. Ms. Johnson tried to serve as daytime superintendent as well as project manager. CREA's contract called for two separate positions, and Walmart people on the scene met with Ms. Johnson to point out that problem. The store manager couldn't find Ms. Johnson to get dumpsters emptied, and the Walmart construction manager couldn't find her to find out where the paint was stored when he couldn't find where the contract said it should be stored. In March, the construction manager told the regional site manager that Ms. Johnson simply wasn't present at the store/work site very often during the day. At times, she was unable to provide status updates to the store management team.

In late March, several Walmart construction officials met with Ms. Johnson

9

to address the problems Walmart perceived. A follow-up email detailed Walmart's expectations in fifteen areas that had been discussed.

A few days later, store employees reported a paint sprayover in the deli by an unsupervised CREA sub-contractor. Paint "dust" had gotten on the merchandise and the fixtures. A store employee discovered and reported the problem on May 31, 2015 at a time Ms. Johnson wasn't on site. Walmart had to close the deli for eight hours while the area was cleaned up. Walmart told Ms. Johnson that the lost merchandise, supplies, and deli business cost Walmart $40,000.

More complaints arose a week later from the store management that Ms. Johnson hadn't been at the job site much; they said self-checkout machines hadn't been installed because Ms. Johnson wasn't there to accept delivery of the needed electrical supplies.

At this point, construction team manager Efrain Vasquez decided things couldn't go on that way and got permission to hire Bill Nichols of Wagner Development, Inc. as a communication liaison. Mr. Vasquez didn't consult Ms. Johnson or anyone else from CREA before doing so. It appears that Mr. Nichols eventually became CREA's only representative at the daily meetings. Mr. Nichols reported to Walmart that CREA hadn't completed extra work it had agreed to do beyond the contract, and Walmart hired (and paid) Mr. Nichols's employer to do that work. About this time, CREA's night superintendent quit.

10

In May, Ms. Johnson requested a meeting about the bid hold. After that meeting, she was given a list of areas in which Walmart said CREA's performance had been deficient.

Ms. Johnson denies that things were that bad. She reports missing three days from work in all. She says she might have been hard to find from time to time because she was walking around the site. But no reasonable factfinder could decide that undetected presence of the project manager and daytime superintendent amounted to meeting Walmart's reasonable expectations. CREA hasn't made out a *prima facie* case of discrimination, and so cannot survive Walmart's summary judgment motion under the burden-shifting approach.

An employment discrimination plaintiff can still "survive summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action ...." Dixon v. County of Racine, 2010 WL 2384590 at *5 (E.D. Wis. 2010) (internal quotation marks omitted) (quoting Nagle v. Village of Calumet Park, 554 F.3d 1106, 1114 (7th Cir. 2009). CREA hasn't done so. None of its evidence, direct or circumstantial, would support an inference of intentional discrimination based on race. That might be because she believes she "was the victim of a more subtle, unconscious type of discrimination, which [Ms. Johnson] characterized as 'indirect' racial animus." [Doc. No. 42 at p. 17]. Her theory reflects more recent discoveries about the operation of the human mind in such areas as implicit bias, but it doesn't reflect the law as it is today. Under today's

law, § 1981 only reaches purposeful, not unconscious, discrimination. General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 389-391 (1982); s*ee also* Gray v. Entergy Operation, Inc., 240 F.3d 1074 (5th Cir. 2000); Collins-Pearcy v. Mediterranean Shipping Co. (USA), Inc., 698 F.Supp.2d 730, 741 (S.D. Tex. 2010) ("A disparate impact claim is not legally viable under § 1981. Section 1981 requires proof of intentional discrimination."). The law might change as science learns more. But today, without evidence that would support a finding of intentional discrimination based on race, CREA's claim must fail.

For the foregoing reasons, the court GRANTS  Walmart's motion for summary judgment [Doc. No. 38]. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:   March 31, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution to all electronically
registered counsel of record